**2011-1219**

UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

HIGHMARK, INC.,

*Plaintiff-Appellee*,

v.

ALLCARE HEALTH MANAGEMENT SYSTEMS, INC.

*Defendant-Appellant.*

Appeal From the United States District Court for the Northern District of Texas,
Case No. 03-CV-1384, District Judge Terry Means

On Remand From the United States Supreme Court,
Case No. 12-1163

**SUPPLEMENTAL BRIEF OF PLAINTIFF-APPELLEE HIGHMARK INC.**

Cynthia E. Kernick
James C. Martin
Thomas M. Pohl
REED SMITH LLP
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222

Attorneys for Plaintiff-Appellee

July 28, 2014

# CERTIFICATE OF INTEREST

Counsel for the Plaintiff-Appellee, Highmark Inc., certifies the following:

The full name of every party or amicus represented by me is:

    Highmark Inc.

The name of the real party in interest if the party named in the caption is not the real party in interest:

    Not applicable.

All parent corporations and any publicly held corporations that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

    None.

The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or United States Supreme Court or are expected to appear in this Court are:

> Cynthia E. Kernick, James C. Martin, Thomas M. Pohl, Kevin S. Katona, Richard T. Ting, Robert D. Kucler, and Frederick H. Colen, Reed Smith LLP, 225 Fifth Avenue, Suite 1200, Pittsburgh, PA 15222.

> Eugene LeDonne, Reed Smith LLP, 599 Lexington Avenue, 29th Floor, New York, NY 10022.

> Craig B. Florence and Robert T. Slovak, Gardere Wynne Sewell, 1601 Elm Street, Suite 3000, Dallas, TX 75201-4761.

> Neal Kumar Katyal, Dominic F. Perella, David M. Ginn, R. Craig Kitchen, Amanda K. Rice, and Jonathan D. Shaub, Hogan Lovells US LLP, 555 13th Street, NW, Washington, DC 20004.

# TABLE OF CONTENTS

<u>Page</u>

CERTIFICATE OF INTEREST ....................................................................... i

TABLE OF CONTENTS ................................................................................ ii

TABLE OF AUTHORITIES ......................................................................... iii

I.      OVERVIEW ....................................................................................... 1

II.     THE REASONING AND HOLDINGS IN *OCTANE FITNESS* AND *HIGHMARK INC.* COMPEL A CHANGE IN THE MAJORITY'S DECISION .............................................................................................. 2

III.   CONSISTENT WITH *OCTANE FITNESS* AND *HIGHMARK INC.*, THE DISTRICT COURT'S EXCEPTIONAL CASE FINDING SHOULD BE AFFIRMED ........................................................................ 6

IV.   THIS COURT'S PRIOR ANALYSIS OF ALLCARE'S LITIGATING POSITIONS AND CONDUCT CANNOT PROVIDE A BASIS TO REVERSE ......................................................................... 14

V.    CONCLUSION ................................................................................. 15

# TABLE OF AUTHORITIES

Page

**Federal Cases**

*Broadcom Corp. v. Qualcomm Inc.*,
    543 F.3d 683 (Fed. Cir. 2008) ................................................................14

*Brooks Furniture Mfg., Inc. v. Dutailer Int'l., Inc.*,
    393 F.3d 1378 (Fed. Cir. 2005) ...............................................................2

*Carbino v. West*,
    168 F.3d 32 (Fed. Cir. 1999) ..................................................................2

*Diego, Inc. v. Audible, Inc.*,
    505 F.3d 1362 (Fed. Cir. 2007) ...............................................................1

*Genentech, Inc. v. Eli Lilly & Co.*,
    998 F.2d 931 (Fed. Cir. 1993) .................................................................5

*Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*,
    134 S. Ct. 1744 (Apr. 29, 2014) ....................................................... 1, 2, 13

*Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.*,
    687 F.3d 1300 (Fed. Cir. 2012) ........................................................ *passim*

*Hughes v. Novi Am., Inc.*,
    724 F.2d 122 (Fed. Cir. 1984) .................................................................1

*Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc.*,
    628 F.3d 1359 (Fed. Cir. 2010) ..............................................................14

*Minnesota Mining & Mfg. Co. v. Norton Co.*,
    929 F.2d 670 (Fed. Cir. 1991) .................................................................5

*Noxell Corp. v. Firehouse No. 1 Bar-B-Que Restaurant*,
    771 F.2d 521 (D.C. Cir. 1985).................................................................4

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
    134 S. Ct. 1749 (Apr. 29, 2014) ........................................................ *passim*

Page

**Federal Cases (continued)**

*SmithKline Beecham Corp. v. Apotex Corp.*,
   439 F.3d 1312 (Fed. Cir. 2006) .......................................................................2

*View Eng'g, Inc. v. Robotic Vision Sys.*,
   208 F.3d 981 (Fed. Cir. 2000) .......................................................................11

*Yamanouchi Pharm. Co., Ltd. v. Danbury Pharmacal, Inc.*,
   231 F.3d 1339 (Fed. Cir. 2000) .......................................................................3

**Federal Statutes**

35 U.S.C. § 101 ..........................................................................................................8

35 U.S.C. § 285 ................................................................................................ *passim*

## I.    OVERVIEW

This Court has asked the parties how it should proceed following remand from the Supreme Court.    From Highmark's perspective, the answer is straightforward enough.    The Court should:    (1) review the district court's exceptional case finding under 28 U.S.C. § 285 using the legal standard set forth in *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749 (Apr. 29, 2014), as well as the standard of review in *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 134 S. Ct. 1744 (Apr. 29, 2014); and, having done so, (2) affirm the district court's exceptional case finding and the corresponding fee award in full.

The reasons supporting this result are equally straightforward.  ***First,*** given the totality of the circumstances carefully reviewed and evaluated by the district court in its opinion, A26-81 (the "EC Finding"), no abuse of discretion is evident in its exceptional case determination.  *See Hughes v. Novi Am., Inc.*, 724 F.2d 122, 124 (Fed. Cir. 1984) (the court can adequately review a § 285 determination for abuse of discretion when "the grounds for the awards [were] spelled out in detail," permitting "meaningful review").  ***Second***, as to the amount of fees awarded, Allcare never raised that as an issue for appeal, nor disputed it with a reasoned argument in its briefing.  *See Diego, Inc. v. Audible, Inc.*, 505 F.3d 1362, 1366-67 (Fed. Cir. 2007) (after finding a case "exceptional" under § 285, a subsequent decision to award fees under § 285 is a wholly-separate step).  Allcare therefore

has waived any question over the amount of the fees awarded, and any argument on that issue "should not be entertained." *Carbino v. West*, 168 F.3d 32, 34 (Fed. Cir. 1999) (collecting cases); *see also SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006) (issues referenced in passing, without elaboration or substantive development in the principal brief, are waived).[1]

## II. THE REASONING AND HOLDINGS IN *OCTANE FITNESS* AND *HIGHMARK INC.* COMPEL A CHANGE IN THE MAJORITY'S DECISION

After more than seven years of litigation, District Judge Terry R. Means issued a 56-page opinion explaining why Allcare's conduct, starting in advance of the underlying litigation and continuing to its conclusion, merited an "exceptional case" finding under § 285. In considering Allcare's appeal of that finding, this Court, in a 2-1 opinion, applied a *de novo* standard of review, affirming-in-part and reversing-in-part. *Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.*, 687 F.3d 1300, 1309-10 (Fed. Cir. 2012) ("2012 Opinion"). In reaching this result, the majority principally relied on *Brooks Furniture Mfg., Inc. v. Dutailer Int'l., Inc.*, 393 F.3d 1378 (Fed. Cir. 2005). After granting certiorari, a unanimous Supreme Court reversed and vacated this Court's decision in *Highmark Inc.*, 134 S. Ct.

---

1  Highmark urges this Court to affirm in full under the Supreme Court's opinions in *Octane Fitness* and *Highmark Inc.* because the settled record requires that result. If this Court believes that the district court should, in the first instance, re-evaluate its reasoning and holding in light of the less stringent *Octane Fitness* standard, then it should remand *only* for that limited purpose. Because of Allcare's waiver, the fee award should not be subject to further dispute here or on remand.

1749, holding that a deferential, abuse-of-discretion standard of review applies to all aspects of an exceptional case determination.

In a companion case, *Octane Fitness*, the Supreme Court unanimously rejected the *Brooks Furniture* standard. The Court instead articulated a flexible, case-by-case standard, focusing on the "totality of circumstances" surrounding the litigation:

> [A]n "exceptional" case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated. District courts may determine whether a case is "exceptional" *in the case-by-case exercise of their discretion, considering the totality of the circumstances*.

*Octane Fitness*, 134 S. Ct. at 1756 (emphasis added); *see also Yamanouchi Pharm. Co., Ltd. v. Danbury Pharmacal, Inc.*, 231 F.3d 1339, 1347 (Fed. Cir. 2000) (cited favorably in *Octane Fitness*, and noting: "In assessing whether a case qualifies as exceptional, the district court must look at the totality of the circumstances").

By comparison, the Supreme Court found the *Brooks Furniture* standard to be "unduly rigid, . . . impermissibly encumber[ing] the statutory grant of discretion to [the] district court[]," *Octane Fitness*, 134 S. Ct. at 1755, and concomitantly observed that "a case presenting either subjective bad faith or exceptionally meritless claims," even without objective baselessness, may sufficiently set a case "apart from mine-run cases to warrant a fee award." *Id.* at 1757 (quoting *Noxell*

*Corp. v. Firehouse No. 1 Bar-B-Que Restaurant*, 771 F.2d 521, 526 (D.C. Cir. 1985) ("Something less than 'bad faith' we believe, suffices to mark a case 'exceptional.'")).  For similar reasons, *Octane Fitness* also rejected the clear-and-convincing evidence standard that previously governed in district courts, explaining:  "[W]e reject the Federal Circuit's requirement that patent litigants establish their entitlement to fees under § 285 by 'clear and convincing evidence' . . . Section 285 demands a simple discretionary inquiry; it imposes no specific evidentiary burden, much less such a high one."  *Octane Fitness*, 134 S. Ct. at 1758 (internal citations omitted).

Together, *Highmark Inc.* and *Octane Fitness* plainly require a re-visiting of the 2012 Opinion.  In marked contrast to *Brooks Furniture*, the *Octane Fitness* standard for determining when a case is "exceptional" is more flexible and easier to satisfy.  And, consistent with *Highmark Inc.*, no part of this Court's post-mandate review is *de novo*.  Further, once the reasons supporting the district court's EC Finding are reviewed with appropriate deference, that Finding should be affirmed.  Given the detailed, record-based determination made by the district court, its EC Finding cannot fairly be labelled as an abuse of discretion.

When reviewing for abuse of discretion, this Court looks narrowly to whether "[(1)] the trial court's decision was based on an incorrect conclusion of law or clearly erroneous findings of fact, [(2)] was devoid of any evidence in the

record upon which the court rationally could have based its decision, or [(3)] was clearly unreasonable or arbitrary." *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 936 (Fed. Cir. 1993) (citing *Minnesota Mining & Mfg. Co. v. Norton Co.*, 929 F.2d 670, 672-73 (Fed. Cir. 1991)).

There is, in fact, nothing clearly unreasonable or clearly arbitrary about the district court's EC Finding in this case. On the contrary, the district court found that Allcare: (1) had *stipulated* to the construction of claims 52 and 102, and its own stipulations made it impossible to find that Highmark's system infringed, A56-58; (2) failed to perform a legitimate pre-filing investigation, A36-46, 50-51, 77; (3) ignored exculpatory information it learned pre-filing about Highmark's system, A49-50, 75-76; (4) used a phony survey to try to force unneeded licenses from Highmark and other innocent third parties, A47-48, 74-75; (5) attempted to justify its allegations against Highmark by improperly relying upon the unproven assumption that Highmark's system must be the same as the unrelated Trigon's and upon the dubious *Trigon* rulings themselves that never found infringement by Trigon, A46-47, 54, 61-63; (6) continued pursuing claims against Highmark after Allcare's own expert rejected Allcare's infringement argument, A54-57, and did so to maintain "leverage" against Highmark, A61; and (7) engaged in litigation misconduct, including modifying its claim construction without leave of court *after* the court's scheduling order deadline, A66-70, 75-77.

Collectively, this persistent pattern of abusive and vexatious conduct provided ample foundation for a fee award under § 285. But the court went even further. It also emphasized that information was available to Allcare—from public sources, from Highmark, and from its own experts—through which Allcare could have, and should have, determined that its infringement allegations lacked merit. Yet Allcare persisted in pursuing these meritless allegations. Allcare offered a myriad of excuses for its actions and failures to act, but none of these obscured Allcare's abusive course of conduct, which started before the sending of its cease and desist letter and ran through the summary judgment proceedings. That is why, after looking at the "totality of these circumstances," the court was firmly convinced that Allcare's pre-litigation conduct and litigating positions "stood out" from the norm and were "exceptional." *See* A26 (discussing actions and positions "over the course of the litigation"); *see also* A42 ("firm conviction"); A52 n.6 ("deceitful conduct"); A75 ("vexatious and deceitful").

That is all that the controlling law, reflected by *Octane Fitness*, requires. The EC Finding therefore should be affirmed.

## III. CONSISTENT WITH *OCTANE FITNESS* AND *HIGHMARK INC.*, THE DISTRICT COURT'S EXCEPTIONAL CASE FINDING SHOULD BE AFFIRMED

During the prior appeal, the Court applied a *de novo* standard and an objective analysis to the district court's EC Finding that left it free to make its own

determinations, as though it was making the exceptional case determination for the first time on appeal. Now, under *Highmark Inc.,* the totality of the circumstances underlying the court's EC Finding must be considered, with its record-based finding given the deference that the abuse-of-discretion standard demands. When the full record is examined through that lens, it cannot be disputed that the district court had multiple, well-documented grounds for exercising its discretion and finding this case exceptional.

**Allcare's claim 102 infringement allegation was frivolously asserted and maintained.** Under the prior and more demanding *Brooks Furniture* standard, this Court *affirmed* the district court's finding that Allcare's pursuit of its infringement allegations regarding claim 102 met the definition of "exceptional." *Highmark*, 687 F.3d at 1313 n.4 (Allcare "knew or should have known that the allegation of infringement of claim 102 was frivolous"); *see also id.* at 1311-13. An affirmance of the claim 102 finding likewise follows under *Octane Fitness* and *Highmark Inc.* In particular, the district court found it compelling that Allcare continued to pursue its infringement contentions after its own expert admitted elements of claim 102 were missing from Highmark's system. A54-55. Apart from that, Allcare also conceded that it pursued its infringement contentions under claim 102 solely for "leverage" against Highmark's invalidity allegations, A60-61. This sort of vexatious conduct manifestly is unreasonable.

**Allcare's claim 52 infringement allegation was frivolously asserted and maintained.** Allcare's meritless litigating positions extended beyond claim 102. Although the 2012 Opinion did not reach the issue, the district court also found Allcare's claim 52 infringement contention—one that never varied before or after claim construction—was, likewise, frivolous. Allcare's litigating position, from start to finish, asserted that claim element 52(c) could be infringed by a provider merely *filling out an electronic form* and separately inserting both symptom data and treatment data into that form.[2] A63. The district court found these contentions frivolous in light of (i) the claim construction *stipulated to* by Allcare, *i.e.*, that element 52(c) covered at least a diagnostic smart system, A56-58, and (ii) the meaning of the word "for" in element 52(c), requiring that the treatment be identified through the entry of the symptom data. A56-58. In contrast, in Highmark's system, "CPT codes," not the entry of symptom data, identified the "treatment." Accordingly, there could be no infringement by Highmark of claim 52. A56-57.

The district court further determined that Allcare should have known that it could not prove infringement under the theory it was promoting because, even

---

2  Whether this abstract idea constitutes patentable subject matter was not reached by the district court because it entered summary judgment of non-infringement, but claims 52 and 102 are infected by a "substantial question" of Section 101 invalidity. *See* A12620 (transcript of 2009 oral argument, pp. 8, 12); *see also* A63 (referencing panel's 2009 comments); *Highmark*, 687 F.3d at 1323-24 (Mayer, J., dissenting) (citing 35 U.S.C. § 101 and collecting cases).

before sending its cease and desist letter, Allcare had obtained a demonstration version of Highmark's system. This demo confirmed that the symptom data of element 52(c) required to be entered "for tentatively identifying the proposed mode of treatment" was missing in Highmark's system and that Highmark's system instead used CPT codes, not any symptom data, to identify treatments. A49-50. The district court also noted that, even if there had there been doubt about non-infringement early in the action, Allcare maintained its claim 52 infringement allegations (as well as claim 102) even *after* its own expert "conceded in his August 2007 deposition that Highmark's system did not infringe the '105 patent" and a*fter* the claim construction rulings "made it apparent that Highmark's system did not infringe upon claim 52." A54-57.

**Allcare's inadequate pre-filing investigation for claims 102 and 52.** Allcare's litigating position with respect to claim 52(c), when combined with its actions in litigating claim 102, compounds and magnifies the unreasonableness of its conduct in pursuing its infringement contentions. But the foundation for the district court's exceptional case analysis went beyond Allcare's persistent pursuit of meritless infringement contentions. Indeed, with those frivolous contentions in mind, the district court also found that the paucity of Allcare's pre-filing investigation—both as to claims 102 and 52—merited the EC Finding. *See* A33-52. Although the 2012 Opinion never reached Allcare's botched pre-filing

investigation for either claim 102 or claim 52, *see Highmark*, 687 F.3d at 1313 n.4 (claim 102); *id.* at 1315 n.6 (claim 52), a review of the pre-filing investigation illuminates the exceptional nature of Allcare's actions.

In evaluating the pre-filing investigation, particular emphasis was given by the district court to claim 52 because the demonstration copy of Highmark's system obtained by Allcare confirmed that Highmark's system used CPT codes, not symptoms, to identify treatments. A33-50. Yet Allcare failed to have any lawyer review the demonstration copy prior to asserting infringement and relied instead on the view of a layman not skilled in the art. A43-44, 49-52. Further, Allcare claimed to have placed its reliance, pre-filing, on charts purporting to compare Highmark's system to those of a system operated by the unrelated Trigon. A38; *see also* A46, 62 (no finding of infringement was made as to Trigon). The evidence confirmed, however, that these charts were not prepared until 11 months *after* Allcare filed its counterclaims. A38, 46.

In fact, Allcare did not consult an expert about Highmark's system until *after* its counterclaims were filed, A38-39; and the "Seaport Survey" upon which Allcare attempted to rely was found to have been merely "a ruse to identify potential targets for licensing demands," A52 n.6, that "failed to ask questions to determine whether the surveyed companies' systems contained all of the necessary elements of claims 52 and 102." A47. This Court confirmed that the survey did

not justify Allcare's belief that its claim 102 infringement allegations had merit. *Highmark*, 687 F.3d at 1313. When the Court reviews that same survey for claim 52, it will likewise conclude—as did the district court—that the survey also does not justify Allcare's belief that Highmark infringed claim 52.

The district court justified its emphasis on the pre-filing investigation in its EC Finding by relying on this Court's precedent:

> [T]he Federal Circuit requires that *prior to filing a complaint of infringement*, including a counterclaim to the alleged infringer's declaratory-judgment action, the patentee "must be prepared to demonstrate to both the court and the alleged infringer exactly why it believed *before filing the claim* that it had a reasonable chance of proving infringement."

A51 (quoting *View Eng'g, Inc. v. Robotic Vision Sys.*, 208 F.3d 981, 986 (Fed. Cir. 2000)) (emphasis added). Allcare, in violation of the requirements of *View Engineering*, 208 F.3d at 986, initiated its infringement claims without having performed *any* meaningful pre-filing investigation of Highmark's system and without any reasonable belief that Highmark's system infringed claims 52 and 102.

**Allcare's other vexatious and abusive misconduct.** Allcare's unreasonableness did not, however, end with its frivolous infringement contentions or deeply-flawed pre-filing investigation. It also extended, as the district court found, to Allcare's litigation tactics.

When assessing whether litigation misconduct justifies an exceptional case finding, "sanctionable conduct is not the benchmark. . . . [A] district court may award fees in the rare case in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so "exceptional" as to justify an award of fees." *Octane Fitness,* 134 S. Ct. at 1756-57.

In examining the entire "course of the litigation," A26, the district court identified numerous instances of misconduct, including Allcare's assertion of meritless res judicata and collateral estoppel defenses based upon the prior, but unrelated, *Trigon* rulings—a tactic the district court found "frivolous and vexatious" because Allcare had previously acknowledged prior to raising these defenses that the *Trigon* rulings "have no binding effect on Highmark in this litigation." A64-65. It also included Allcare's ever "shifting claim construction," found vexatious because of "[t]he timing of Allcare's proposed constructions." That is, Allcare twice changed its proposed construction "[a]fter the scheduling-order deadline" and without leave of court. A66.[3] And, in examining the litigation as a whole, the district court also properly considered Allcare's misrepresentation to the Western District of Pennsylvania that it lacked control of the Seaport Survey—a misrepresentation made to defeat jurisdiction in Pennsylvania that the

---

3  The 2012 Opinion looked only to the substance of the changed constructions, *Highmark,* 687 F.3d at 1317-18, and did not consider the court's concern that *any* modification required leave of court—something Allcare never obtained.

district court found was "at best obfuscatory," "strain[ing] the bounds of zealous advocacy." A70.[4]

The district court's thoughtful and comprehensive analysis demonstrates why Allcare's entire course of conduct moved this case into the exceptional category. As required under *Octane Fitness*, the court made clear why it is that this case "is simply one that stands out from others" as "exceptional," regardless of whether each individual act would independently be sanctionable. *Highmark Inc.*, 134 S. Ct. at 1748. Indeed, in summarizing Allcare's conduct, the district court drove that point home:

> Allcare's actions align with the sort of conduct that gives the term "patent troll" its negative connotation. [It] used a survey with a stated purpose of identifying leaders in the medical-information-processing industry as a ruse to identify potential targets for licensing demands, accused Highmark of infringing the '105 patent and, ultimately, filed counterclaims for infringement against Highmark having never performed an adequate investigation of such claims, and, along the way engaged in questionable and, at times, deceitful conduct.

A52 n.6.

Here, applying the deference that is required under *Highmark Inc.*, the district court did not abuse its discretion in making its EC Finding. Its finding should be affirmed.

---

4 To hold conduct in a transferring court not relevant under § 285 would, for example, insulate nearly all Multi-District Litigation cases from § 285 because claim construction is frequently handled in one jurisdiction before transfer to another for the infringement analysis.

## IV.   THIS COURT'S PRIOR ANALYSIS OF ALLCARE'S LITIGATING POSITIONS AND CONDUCT CANNOT PROVIDE A BASIS TO REVERSE

The route this Court traversed in its 2012 Opinion to reverse-in-part is foreclosed.  There is no clear and convincing burden of proof before an exceptional case finding can be made.  Nor is the Court's review of the EC Finding *de novo*. Gone, too, is the objective standard the majority applied in reversing the district court's EC Finding without deference.   Any effort to adopt this Court's prior holding, or its reasoning, would not be faithful to the controlling legal standards.

For example, the prior analysis rejecting the exceptional case finding related to claim 52(c) was based on a claim construction that Allcare never advanced, and did not reflect its litigating position at all.  That analysis was possible only because the Court undertook its review *de novo*, applying the "objectively baseless" standard of *Brooks Furniture*.  But such a novel theory, not actually presented to the trial court for its consideration and contrary to Allcare's own stipulations, has no role to play under an abuse-of-discretion standard of review.  *See*, *e.g.*, *Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc.*, 628 F.3d 1359, 1376 (Fed. Cir. 2010) (citing *Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 694 (Fed. Cir. 2008) (arguments, including claim construction arguments, not presented to the district court are not considered on appeal).   The same goes for the majority's assessment of Allcare's litigation tactics.   The 2012 Opinion similarly dispensed with

Allcare's conduct only by resorting to *de novo* review. For comparative purposes, in light of the now-controlling legal standard, the prior dissenting opinion, *Highmark*, 687 F.3d at 1323, explains why the outcome must be different when appropriate deference is given. Highmark urges this Court to adopt that reasoning now.

## V. CONCLUSION

Consistent with controlling law, the district court's EC Finding and award of attorneys' fees should be affirmed in full.

Respectfully submitted,

July 28, 2014                    By:  */s/ Cynthia E. Kernick*
                                      Cynthia E. Kernick
                                      James C. Martin
                                      Thomas M. Pohl
                                      REED SMITH LLP
                                      225 Fifth Avenue
                                      Pittsburgh, PA 15222
                                      (412) 288-3131
                                      *Attorneys for Plaintiff-Appellee*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing **SUPPLEMENTAL BRIEF OF PLAINTIFF-APPELLEE HIGHMARK INC.** this 28th day of July, 2014, via the Court's Case Management/Electronic Case Files (CM/ECF) system.

The following counsel of record have been electronically served via that system:

Dan S. Boyd, Esq.
The Boyd Law Firm, P.C.
13155 Noel Rd., Suite 700
Dallas, TX 75240

Donald R. Dunner, Esq.
Finnegan, Henderson, Farabow,
  Garrett & Dunner, LLP
901 New York Avenue, NW
Washington, DC 20001

Erik R. Puknys, Esq.
Finnegan, Henderson, Farabow,
  Garrett & Dunner, LLP
Stanford Research Park
3300 Hillview Avenue
Palo Alto, CA 94304

By:  */s/ Cynthia E. Kernick*
      Cynthia E. Kernick
      REED SMITH LLP
      Attorney for Plaintiff-Appellee
      Highmark Inc.
      July 28, 2011